### PEOPLE *ex rel.* LEO *et al. v.* HILL *et al.*

(*Supreme Court, General Term, First Department.* February 13, 1891.)

1. MILITIA—POWERS OF CONGRESS.
　　Under Const. U. S. art. 1, § 8, subds. 15, 16, giving congress power to provide for calling forth the militia to execute the laws of the Union, suppress insurrection, and repel invasion, and to provide for organizing, arming, and disciplining the militia, and for "governing" such part of them as may be employed in the service of the United States, reserving to the states, respectively, the appointment of the officers and the authority of training the militia according to the discipline prescribed by congress, the only instance where governmental powers may be exercised by the United States is when the militia shall be employed in the service of the United States. At all other times the whole government of the militia is within the province of the state, and therefore any legislation which the state may adopt relating to the government of the militia in no wise contracts powers conferred upon congress, as long as it does not infringe upon the method of organization.

2. SAME—RELIEVING OFFICER OF COMMAND.
　　Const. N. Y. art. 11, § 5, providing that no commissioned officer shall be removed from office unless by the senate, on the recommendation of the governor, stating the ground on which such removal is recommended, or by the decision of a court-martial pursuant to law, does not apply where the officer has been simply relieved of his command.

3. CERTIORARI—TO GOVERNOR AS COMMANDER IN CHIEF.
　　The writ of *certiorari* will not lie to review the action of the governor, as commander in chief, in disbanding a company of the militia, under the provisions of the New York Militia Code.

Application for writ of *certiorari* directed to the commander in chief of the state militia, and to the adjutant general and assistant inspector general, to review an order made by the governor of this state, as commander in chief, etc., on the 10th October, 1890, disbanding Company I of the twenty-second regiment of the National Guard. For report of a former application made at special term, and denied without prejudice to the right to renew at general term, see *ante*, 186.

Argued before VAN BRUNT, P. J., and DANIELS and O'BRIEN, JJ.

*A. B. Gardner*, and *W. C. Reddy*, for relators. *Chas. F. Tabor*, *El. F. Jenks*, and *W. W. Ladd, Jr.*, for respondents.

VAN BRUNT, P. J. It would not be at all necessary to add anything to the very satisfactory opinion pronounced by Mr. Justice ANDREWS upon the application to the special term for this same writ of *certiorari*, because we can do little but reiterate what has already been said by him in the consideration of the subject when the application was before him for determination, were it not for the fact that it seems to be assumed by the learned counsel for the relators that whatever rights the state of New York has in reference to the government of its militia are derived from the federal constitution and laws, and that unless we can find authority in such constitution, or in the enactments of congress, for the action which has been taken, the legislature of this state had no right to confer the power to act upon its governor; whereas, upon the contrary, whatever delegation of authority has been made is from the people to the United States, and only to the extent provided for in the constitution of the United States. It therefore follows that, in considering the argument very briefly, we must have regard to the provisions of the constitution of the United States, and gather from that what authority has been conferred by the people upon the United States in reference to its militia. The fifteenth subdivision of section 8 of the constitution provides that congress shall have power to provide for calling forth the militia to execute the laws of the Union, suppress insurrection, and repel invasion; and, by the sixteenth subdivision, to provide for organizing, arming, and disciplining the militia, and for governing such part of them as may be employed in the service of the United States, reserving to the states, respectively, the appointment of the officers, and the authority of training the militia according to the discipline prescribed by congress.

It will thus be seen that the power conferred upon the United States is to provide for organizing, arming, and disciplining the militia, and governing such part of them as may be employed in the service of the United States. It is apparent that the organization here mentioned refers to the manner of formation of the militia, the weapons with which they shall be armed, and the tactics in which they shall be instructed. "Disciplining," as used in this section, refers in no wise to governmental action, as is apparent from the last clause of the section, where it is provided that the authority of training the militia according to the discipline prescribed by congress is reserved to the states. And the states were so zealous in guarding the right to control the government of the militia, and the material of its organization, that, in order that there should be no mistake, and that no greater powers should be claimed because of the word "organizing" than were implied in prescribing the method of the formation of the militia, the appointment of officers, and authority to train is expressly reserved; and the only instance where governmental powers may be exercised by the United States is distinctly mentioned, viz., when the militia shall be employed in the service of the United States. At all other times the whole government of the militia is within the province of the state, and therefore any legislation which the state may adopt, relating to the government of the militia, is in no wise in contravention of the powers con-

ferred upon congress, as long as it does not infringe upon the method of organization.

Why was the power granted to the United States to provide for organizing, arming, and disciplining the militia? It was that the militia should be organized after one model, armed in a uniform manner, and disciplined in one system of tactics; the result being that, when the militia of different states come together, called into service by the government of the United States, they come together as a homogeneous body, all organized in one way, armed one way, and disciplined in one way; and not as a confused mass, having different methods of organization, different arms, and acquainted with different systems of tactics, and hence their usefulness very materially impaired. It was to provide against this contingency that this power was conferred upon the United States by the constitution, and beyond this the states delegated no authority to the United States to interfere in their internal affairs in respect to the government of the militia. Now, it may be that in some particulars the Military Code which has been adopted by the state of New York may infringe upon some of the regulations of congress passed pursuant to the authority conferred by the constitution of the United States, but they in no respect relate to the subject which is presented to the court upon the claim of a right to review the action of the authorities of this state in disbanding a company of militia. It was in pursuance of the authority conferred by the constitution that in Rev. St. § 1630, it was provided that the militia of each state shall be arranged into divisions, brigades, regiments, battalions, and companies, as the legislature might direct; and that each brigade might consist of a certain number of regiments, each regiment of a certain number of battalions, each battalion of a certain number of companies, and each company of a certain number of men; and there is no attempt in the legislation of congress to interfere with the government of the militia, except when called into the service of the United States. It seems necessarily to follow that all governmental powers are to be exercised by the state, within the limits of the constitution of the state, in such manner as the legislature may direct.

But it is urged that the statute was a violation of the state constitution, in that it removed the relator Leo from his office and *status* as an officer of the militia, contrary to article 11, § 5, of the constitution of the state of New York, which provides that no commissioned officer shall be removed from office unless by the senate on the recommendation of the governor, stating the ground on which such removal is recommended, or by the decision of a court-martial pursuant to law. It is clear that this provision has not been transgressed. The relator has not been removed from his office, but simply relieved of his command,—a distinction recognized by all military authorities, and acted upon by the president of the United States continuously in his supervision of the regular army of the United States. It is urged, however, that this court should exercise supervision of the action of the governor in cases of this description, because, if he has the absolute discretion as provided by the statute, such discretion may be grossly abused. The presumption usually is that public officers will perform their duty conscientiously, and for the best interests of the community, and, if this court is to review the action of the governor in doing those things which he has been expressly authorized in his discretion to do by the legislature, then the courts may be called upon to review executive officers in their appointment of officers, where the legislature has seen fit to confer such power, upon the ground that they have abused the discretion conferred upon them. It seems apparent that such an argument cannot obtain, as the power is no more absolute in the one case than it is in the other. It seems to be assumed that all the provisions of the Revised Statutes of the United States in reference to the government of the militia are applicable to those times when the power to govern the militia has been expressly reserved to the states. It is clear that these regulations apply to

the militia only when they are subject to the governmental power of the United States; viz., when they are called into its service. It is needless to pursue the subject further, because it seems to us that the arrogation by the court of any such power as is claimed would be an invasion of the functions of another department of the government, and would be absolutely subversive of that respect for and obedience to authority which is necessary in every military organization. We think, therefore, that there is no case made out which would justify this court in granting the writ asked for, and the application must be denied. All concur.