PEOPLE *ex rel.* LEO *v.* CAMP.

*(Supreme Court, General Term, First Department. December 31, 1891.)*

MANDAMUS—TO OFFICER OF MILITIA.

A company, part of a regiment of the state militia, was disbanded and mustered out by order of the governor, as commander in chief, under Laws 1888, c. 332, § 1. *Held,* that a writ of *mandamus* would not be granted to compel the colonel of the regiment to recognize the captain of such company as an officer on active duty, and to accord him rights as such officer, as distinct from those of a supernumerary officer.

Appeal from special term, New York county.

Application by John P. Leo for a *mandamus* to compel John T. Camp, as colonel of the twenty-second regiment of the National Guard of the state of New York to recognize him as captain of Company I in said regiment. Application denied. Relator appeals. Affirmed.

Argued before DANIELS and LAMBERT, JJ.

*Asa B. Gardiner* and *Wm. C. Reddy,* for appellant. *Almet F. Jenks* and *Wm. W. Ladd, Jr.,* for respondent.

DANIELS, J. The application is made by John P. Leo, as captain of Company I of the twenty-second regiment of the National Guard of the state of New York. The company had been previously disbanded by an order of the governor, acting in his capacity of commander in chief. This order was authorized by section 1, c. 332, Laws 1888. His power to make the order was considered and sustained in the denial of a previous application made in behalf of the captain for a writ of *certiorari* to review the action of the commander in chief, and the order denying that application was affirmed by the general term. 13 N. Y. Supp. 637. A state of facts quite similar to these then made to appear has been presented in support of the application for the writ of *mandamus.* In support of the application the applicant states that he has been deprived of his office, and that due demand had been made of the commanding officer of the regiment for his restoration to that office, which had been unjustly and unlawfully refused; and the writ has been applied for, commanding the respondent, the colonel of the regiment, his successors, subordinates, and assistants, to restore the name of the petitioner to the roll of officers of the regiment, and to recognize him in the performance of the functions of his office as captain therein, and permit him to exercise the powers, duties, and privileges of captain in the regiment. The colonel of the regiment had no power to comply with this demand, even though it was made as that is stated to have been done by the applicant; for, as the company had been lawfully disbanded, and the other companies comprising the regiment each had its own captain, the colonel did not have the power, if he had the inclination, to make this official restoration of the applicant. That he had been removed, or was intended to be removed, from his office, has not been established as a fact. All that has been done has been to comply with the order

of the commander in chief to disband and muster out the company, and that still left the applicant in his office, but necessarily only as a supernumerary. He has his office, without a command. The affidavit of the colonel, used in answer to the application, discloses this as the situation of the applicant. He says: "No demand was ever made upon me by the above-named relator to recognize him as a supernumerary officer, nor to accord him any privileges or rights as such. The demand made upon me was to recognize the relator as an officer on active duty, and to accord him the rights and privileges of such an officer, as distinct from those of a supernumerary officer. I refused to agree to such demand in obedience to the order of the governor, commander in chief, making the relator a supernumerary officer, a copy of which order is attached to the affidavit verified herein by me, March 23, 1891, and is known and described as 'Special Order No. 99, General Headquarters, Series 1890,' and dated October 10, 1890. The relator has not been refused by me any of his rights as supernumerary officer." And as there seems to be no reason for doubting the correctness of this statement, the conclusion follows that the applicant has not been deprived of any of his legal rights. What has taken place has been done under the authority of the law, and that can in no respect be changed by the writ of *mandamus.* No case has been maintained which will justify the issuing of this writ, and the order should be affirmed, with $10 costs and the disbursements.

LAMBERT, J., (*concurring.*) The relator was commissioned as captain in the twenty-second regiment of infantry, N. G. S. N. Y., in March, 1885, and thereafter assigned as captain of Company I of said regiment, and so continued until October, 1890, when the governor, as commander in chief of the military and naval forces of the state of New York, disbanded said company. Upon a former appeal from an order denying the relator's application for a writ of *certiorari* to review the action of the governor in disbanding Company I of the said regiment, on the ground that it was *ultra vires,* and unconstitutional, (13 N. Y. Supp. 637,) it was decided by this court that the action of the governor did not offend any of the provisions of the constitution of the state, and that his action was not reviewable by the courts. It was further held that the relator was a commissioned officer, as provided for by article 11 of the constitution, and could not be, as against his consent, deprived of his said office, except as in the manner therein provided; and that the only legal effect of the order made by the governor was to relieve him from command of Company I, and did not deprive him of the office of captain of the twenty-second regiment, thereby leaving the law to fix his *status* in the military service of the state, which is conceded by the relator to be that of a supernumerary officer, as distinguished from an officer engaged in active service; and such were the terms of the order disbanding Company I. It is there stated: "The commissioned officers rendered supernumerary." It follows that the relator is entitled to such recognition by the respondent as that of a supernumerary officer, and no more.

The principal charge made by the relator against the respondent, and alleged to result in serious consequences to him, is that he struck his name from the roster of the twenty-second regiment, without right or authority of law, and has since deprived him of his office and appurtenances thereto. Having become a supernumerary officer, we see no good reason why his name should be kept on the roll with the officers in the discharge of active duties; and he does not cite us to any rule or regulation under the military law of the state, or statute, requiring his name to be so kept, either by the respondent or any other person, and we believe none such exist; and it is manifest that there is no sensible reason for such a regulation or practice. Section 44 of the military code, as amended by chapter 332 of the Laws of 1888, and regulation No. 24, provides for the only system of enrollment of supernumerary

officers to which our attention has been called, and professedly the relator has not complied with these provisions and requirements, and cannot claim the privileges there provided. In the printed points submitted on behalf of the relator it is claimed that the relator did not comply with the provisions of the statute referred to, and of the rules relating to enrollment of supernumerary officers, for the express purpose that he did not wish to be relieved from military duty as by the statute provided. It is therefore made plain that the respondent and officers of the twenty-second regiment were under no duty or obligation to the relator to continue his name as a commissioned officer of the twenty-second regiment upon its roster. If so, then there is no cause to complain, as no regulation or statute was violated by dropping his name from the roster.

The only other grievance sought to be redressed by the means to be afforded by this application is that the respondent has refused to permit the relator to exercise any of the functions, powers, and privileges vested in him by virtue of his commission as captain in the twenty-second regiment. It is claimed that, as a supernumerary officer, the relator, in his official capacity, has the right to act as a member of the board of officers of the twenty-second regiment, to vote at elections for field officers, to appear at drills and parades provided for by statute, and receive compensation therefor, and perform other duties and functions conferred upon commissioned officers under the constitution of the state. It is unnecessary to investigate the legality of these claims, for the reason that it is not made to appear by legal evidence that he has been deprived of the right to exercise the functions of his office, or discharge any duty imposed upon him by law as a commissioned officer in the military service of the state. The allegation "that the respondent has refused to permit him to exercise any of the functions, powers, and privileges vested in him by virtue of his commission as captain in the twenty-second regiment" is but the statement of a conclusion. It does not appear that at any time or place the relator presented himself for the discharge of any duty or the exercise of any function conferred upon him by law that was denied him by the respondent or any other person. Even in the absence of any denial of the conclusions contained in the moving papers the court would be required, for want of proof, to deny the relator's application. The respondent makes oath that no demand was ever made upon him by the relator to recognize him as a supernumerary officer, nor to accord any privileges or rights as such. This application was properly disposed of by the special term, and the order denying the writ of *mandamus* should be affirmed, with $10 costs and disbursements.